## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:                                         Chapter 11

SHARPE CONTRACTORS, LLC,                        Case No. 20-72638

    Debtor.

_____/

## SELECTIVE INSURANCE COMPANY OF AMERICA'S MOTION TO LIFT STAY, ALTERNATIVELY, FOR ADEQUATE PROTECTION

Selective Insurance Company of America ("Selective"), through undersigned counsel, pursuant to 11 U.S.C. § 362(d) and 11 U.S.C. § 105, moves this Honorable Court for an Order modifying the automatic stay in the captioned bankruptcy to permit Selective to: (1) collect Bonded Contract Funds from the Owner on the Bonded Brunswick Contract (all defined below); and (2) to utilize said Bonded Contract Funds to pay and/or reimburse Selective for claims it paid under the bonds it issued on behalf of the Debtor on the Brunswick Project.

Alternatively, Selective seeks adequate protection of the Bonded Contract Funds in the form of an order requiring that the Bonded Contract Funds, as collected, be deposited into a separate trust account that requires the signature of the Debtor and Selective before funds can be disbursed, and an Order that the Bonded Contract Funds can be used only for direct Bonded Project subcontractor and supplier claims under the payment bond, and/or to reimburse Selective for claims that it has paid under the Bonds and not for other purposes, such as payment

of officer salaries, home office overhead or other projects.  In support of this
motion, Selective states:

## **BACKGROUND**

1.      This Court has subject matter jurisdiction over this matter pursuant to
28 U.S.C. Sections 157 and 1334 and by virtue of the reference by the district court
pursuant to ULLR 83.4.1.  This matter is a "core" proceeding pursuant to 28
U.S.C. Section 157(b)(2).

2.      On December 14, 2020, the Debtor filed a Voluntary Petition for
Relief under Chapter 11 of the United States Bankruptcy Code.

3.      At all material times, the Debtor was engaged in commercial
construction.

4.      At the time that the Debtor sought protection, Debtor was a party to,
among others, a completed contract that Selective bonded for project known as the
Holiday Inn Express located in Brunswick, Georgia (the "Brunswick Project"), that
may have continuing maintenance, warranty and/or latent defect exposure. The
contract between Debtor and the owner for the Brunswick Project is sometimes
referred to as the "Bonded Contract."

5.      The Debtor was required to provide a payment bond and a
performance bond in connection with the Bonded Contract, as security for the

-2-

Debtor's performance under the Bonded Contract and payment of laborers and materialmen providing labor and materials incorporated into the work under the Bonded Contract, and sought said bonds from Selective, a surety in the business of providing payment and performance bonds to selected entities.

6.    Before it would issue said payment and performance bonds, Selective required certain protections from the Debtor of monies to be paid to the Debtor under the Bonded Contract and from loss to Selective in the event that the Debtor failed to perform all of its obligations under the Bonded Contract or to pay labor and material suppliers on the Bonded Contract.

7.    In order to induce Selective to issue the bonds, the Debtor (and others) signed a General Agreement of Indemnity (the "Indemnity Agreement") with Selective, a copy of which is attached as **Exhibit "A."**

8.    In reliance on the Indemnity Agreement, Selective issued a performance bond and a payment bond (the "Performance Bond" and the "Payment Bond" also sometimes collectively referred to as the "Bonds") in connection with the Brunswick Project naming The Dixon Management Group, Inc. as Obligee (the "Owner") and the Debtor as principal, on behalf of and at the request of the Debtor.

9.      The contract funds on the Bonded Contract (the "Bonded Contract Funds") are trust funds for payment of the costs of completing the work under the Bonded Contract, payment of those supplying labor and materials used in the prosecution of work under the Bonded Contract, and repayment to Selective for amounts it paid to resolve claims on the Bonds, and Selective has a first priority right to the Bonded Contract Funds under the Indemnity Agreement and principles of equitable subrogation.  *See Federal Ins. Co. v. Community State Bank*, 905 F.2d 112 (5th Cir. 1990); *United States Fidelity & Guaranty Co. v. Housing Authority of the Town of Berwick*, 557 F.2d 482 (5th Cir. 1977); *see also Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.,* 540 So. 2d 113 (Fla. 1989).  The Bonded Contract Funds serve to reduce the loss to Selective in the event of the failure of the Debtor to perform under the Bonded Contract.

10.     The Indemnity Agreement provides, in pertinent part:

**1.** . . .  **Application** – This Agreement applies to any Bond executed prior to, contemporaneously with, or after the execution of this Agreement.

* * *

**10.  Trust Funds:** If any of the Bonds or other instruments are executed by Surety in connection with the performance of a contract, the entire contract price or other consideration to be received by an Indemnitor, whether received as payments or loans, shall be dedicated to the satisfaction of the condition of the Bond(s) or other instrument(s). All consideration, including all funds paid, due or

become due and all securities, warrants, checks or other evidence of indebtedness and the process thereof, given upon or under any contract in connection with which Surety shall have issued a Bond ("Trust Funds") shall be impressed with a trust in favor of and for the benefit of laborers, materialmen, suppliers, subcontractors and Surety for the exclusive purpose of satisfying the conditions of the Bonds. In the event of a default by any Indemnitor in the performance of compliance with any promise, covenant or obligation under this agreement, the Surety may demand and the Indemnitors shall cause all funds or the proceeds of all consideration received or to be received from any contract referred to in any Bond to be deposited into separate trust accounts with a bank or similar depository designated by Surety and such accounts shall be controlled by an escrow agent to be designated by Surety. If any of the Bonds or other instruments are executed by Surety to assure that funds collected by an Indemnitor, or any taxable or chargeable portion thereof, are paid to a third party obligee, all such funds received by such Indemnitor shall be impressed with a trust in favor of and for the benefit of such obligee and Surety for the exclusive purpose of satisfying the conditions of the Bonds and each Indemnitor who exercises control or has the ability to exercise control over the collection and application of such trust funds shall have a fiduciary duty owing to the Surety to segregate such trust funds and cause such trust funds o be paid to the obligee, In the event of a default by any Indemnitor in the performance or compliance with any promise, covenant or obligation under this agreement, the Surety may demand and the Indemnitors shall cause all such trust funds to be deposited into separate trust accounts with a bank or similar depository designated by Surety and such accounts shall be controlled by an escrow agent to be designated by Surety.

* * *

**5.**   <u>**Assignments**</u>**:** The Indemnitors do hereby assign, transfer, pledge and convey to Surety as collateral security to secure the obligations of the Indemnitors hereunder, under the Bonds and with respect to any other liability or indebtedness of the Indemnitors to Surety whether heretofore or hereinafter incurred: (A) All moneys due or to become due to the Indemnitors and all rights and title and interest of the Indemnitors in, or growing in any manner out of, or in any way related to, any contract in which the Indemnitors or any of them may have an interest, whether or not bonded by Surety, now existing or hereafter acquired and any extension, modifications, changes, alterations or additions thereto, including but not limited to any and all sums due or that may become due under any contract, compensation for extra work and claims and the proceeds of any insurance policies payable to any of the Indemnitors; (B) All subcontracts and purchase orders let or to be let by an of the Indemnitors and all rights, actions, causes of action, claims and demands of whatsoever kind which any of the Indemnitors may now have or hereafter acquired with respect to any contract or subcontract or purchase order or any bonds given to any Indemnitor by any subcontractor or vendor in connection with any contract; (C) All right, title and interest of the Indemnitors in and to any contract, any sums due under any contract and any and all rights under the contract, the work and all supplies, tools, plant, machinery, equipment and materials of whatsoever kind that may then or thereafter be upon the work, or in, on or about the site thereof, and all materials purchased for or chargeable to any contract which may be in the process of manufacture or construction, or in transportation or in storage elsewhere in connection with any contract whether or not bonded by Surety and the proceeds of any insurance policies issued with respect thereto.

11.    The Debtor failed to pay certain subcontractors and suppliers on the Brunswick Project, and multiple claims were made against Selective's Payment Bond.

12.    Specifically, Carolinas Construction Solutions, LLC, a subcontractor to the Debtor on the Brunswick Project, filed suit in the matter entitled *Carolinas Construction Solutions, LLC, v. Selective Insurance Company of America, and Sharpe Contractors, LLC*, Case No. CE20-00484 in the Superior Court for Glynn County, Georgia, alleging that Debtor failed to pay the principal sum of $161,732.86 for labor it provided on the Brunswick Project. A copy of the Complaint is attached as **Exhibit "B."**

13.    Further, Selective has received numerous other payment bond claims alleging that the Debtor has failed to pay subcontractors and suppliers on Bonded Contract for labor and materials incorporated into the Brunswick Project. Selective has paid at least $930,786.39 of the Payment Bond claims that it has received on the Brunswick Project (as shown in the table below) for which it has recovered only $95,790.52. Therefore, Selective has not been reimbursed for at least $834,995.87 of the amount it paid to subcontractors and suppliers on Bonded Contract for labor and materials incorporated into the Brunswick Project.

-7-

| Claimant | Amount |
|---|---|
| Certified Electric, Inc. | $56,086.39 |
| Commercial Cabinetry | $46,847.53 |
| D&D Decorators | $ 95,790.52 |
| Dirt Works, Ent. Inc. | $ 15,900.00 |
| Douglasville Winelectric Co. | $198,335.50 |
| FabCon, Inc. | $7,650.00 |
| GFY Service, LLC | $9,000.00 |
| JW Oliver Construction | $33,923.70 |
| Junior's Cleaning Service | $20,000.00 |
| KB Flooring Design | $24,580.80 |
| Latin Electric Workforce | $150,000.00 |
| Mgroup | $27,000.00 |
| Majestic Eagle | $151,989.50 |
| New Coat Painting, Inc. | $25,000.00 |
| RNB Construction | $5,400.00 |
| Renovo Services, Inc. dba | $14,626.19 |
| Southeastern Steamers | $4,166.75 |
| Sundance Tile and Stone | $4,222.40 |
| Troyer's Specialty Fencing | $23,356.23 |
| Windover Water, Inc. dba | $16,910.88 |
| **Total** | **$930,786.39** |

14.    One or more of the events set forth in Paragraph 5 of the Indemnity Agreement has occurred, including, without limitation: (a) An abandonment, forfeiture, or breach of, or failure, refusal or inability to perform, the terms and provisions of any contract with respect to which a Bond or other instrument has been executed by Surety or demand by an obligee against a Bond alleging a default of a bonded obligation; (b) the failure, delay, refusal, or inability of an Indemnitor to pay bills or other indebtedness incurred in, or in connection with, the

-8-

performance of any contract with respect to which a Bond or other instrument has been executed by Surety; (c) the failure, refusal or inability of an Indemnitor to satisfy any of the conditions of any such Bond or other instrument executed by Surety; (d) the failure of an Indemnitor to perform, or comply with any of the promises, covenants and obligations of the Indemnity Agreement; (e) an assignment by an Indemnitor for the benefit of creditors, any appointment or application for the appointment of a receiver or trustee, or any voluntary or involuntary filing of a petition under Title 11 of the United States Code as to any Indemnitor whether insolvent or not.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

15.    The Bonded Contract Funds are not property of the estate within the meaning of 11 U.S.C. § 541 as the Debtor has failed to pay subcontractors and/or suppliers for work performed on the Bonded Contract, and owes significant billed but unpaid amounts to other subcontractors and/or suppliers on Bonded Contract. Therefore, the Debtor did not earn the Bonded Contract Funds, which represent work performed by subcontractors and/or suppliers.

16.    The Bonded Contract Funds are not property of the estate within the meaning of 11 U.S.C. § 541 to the extent that the Debtor has failed to complete the project or failed to pay its subcontractors and suppliers, and to the extent Selective

-9-

has paid Debtor's subcontractors and suppliers under the terms of the Bonds. To the extent that the Debtor has failed to pay subcontractors and suppliers, it has not earned the Bonded Contract Funds, which represents work performed by these subcontractors and suppliers. *See Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 135-36, 83 S.Ct. 232, 237 (1962) (recognizing surety's priority right to contract funds); *Travelers Indem. Co. v. W. Ga. Nat'l Bank*, 387 F. Supp. 1090, 1093 (N.D. Ga. 1974); *In re Merts Equip. Co.*, 438 F. Supp. 295, 297 (M.D. Ga. 1977); *In re Phillips Materials Co.*, Bankruptcy Case No. A87-04857-ADK Chapter 11, Adversary Case No. 88-0533A, 1989 Bankr. LEXIS 1356, at *6-7 (Bankr. N.D. Ga. July 31, 1989); *In re Modular Structures, Inc.*, 27 F.3d 72, 77 (3rd Cir. 1994); *Trinity Universal Ins. Co. v. United States*, 382 F.2d 317, 320 (5th Cir. 1967), *cert. denied,* 390 U.S. 906, 88 S.Ct. 820 (1968); *In re E.R. Fegert, Inc.*, 88 B.R. 258, 260 (B.A.P. 9th Cir. 1988); *Capitol Indemnity Corp. v. Heidkamp*, 312 B.R. 437 (M.D. Fla. 2003); *In re Colt Engineering, Inc.*, 288 B.R. 861 (Bankr. C.D. Ca. 2003); *In re Pacific Marine Dredging & Construction*, 79 B.R. 924, 929 (Bankr. D.Or. 1987). The Debtor has failed to earn the Bonded Contract Funds, and they are not property of the estate. In *Travelers Indemnity*, the Court noted:

> [U]pon default, the surety which is obligated to complete the work steps into the shoes of the [obligee on the bond] . . . It is subrogated not only to the right of the [obligee] to

-10-

> pay laborers and materialmen from funds retained out of
> progress payments . . . but also to the [obligee's] right to
> apply to the cost of completion the earned but unpaid
> progress payments in its hands at the time of default.

387 F. Supp. at 1093.  Likewise, in  *E.R. Fegert, Inc.*, the Court stated:

> [A] surety has the common-law right of subrogation to
> contract balances upon completing of the job and payment
> of the subcontractors and materialmen, which is superior to
> the interest of the bankruptcy estate. 371 U.S. at 136, 140-
> 41. This ruling was in line with the well-established
> equitable doctrine of subrogation, which was designed to
> promote substantial justice by protecting the surety.

88 B.R. at 260.

17.    The Northern District of Georgia has applied *Pearlman* and upheld the

surety's right of equitable subrogation in and to the contract funds. *Travelers Indem.*

*Co. v. W. Ga. Nat'l Bank*, 387 F. Supp. 1090, 1093 (N.D. Ga. 1974); *see also In re*

*Phillips Materials Co.*, Bankruptcy Case No. A87-04857-ADK Chapter 11,

Adversary Case No. 88-0533A, 1989 Bankr. LEXIS 1356, at *6-7 (Bankr. N.D. Ga.

July 31, 1989); *In re Merts Equip. Co.*, 438 F. Supp. 295, 297 (M.D. Ga. 1977);

*Capitol Indemnity*, supra, 312 B.R. at 442; *In re Cone Constructors, Inc.*, 265 B.R.

302, 308-309 (Bkrtcy. M.D. Fla. 2001); *In re Caddie Construction Co.*, 125 B.R.

674, 678 (Bkrtcy. M.D. Fla. 1991).  Thus, the Debtor should not be permitted to use

-11-

contract funds for any purpose other than to pay amounts owed to subcontractors and suppliers and direct Bonded Contract costs.

18.    Selective further has a priority interest in the Bonded Contract Funds as the subrogee of the obligee on and claimants under the Bonds. *Travelers Indem. Co. v. W. Ga. Nat'l Bank*, 387 F. Supp. 1090, 1093 (N.D. Ga. 1974) ("a surety 'is not only a subrogee of the contractor, . . . but also a subrogee of the [owner] and entitled to any rights the [owner] has to the retained funds.'"); *see also In re Merts Equip. Co.*, 438 F. Supp. 295, 297 (M.D. Ga. 1977) ("The law is clear that the surety enjoys a special place with respect to retained contract funds which become available because the surety completes a construction project . . . the surety has an equitable lien upon the contract funds and that by virtue of this lien the surety takes precedence over the trustee in bankruptcy of a bankrupt contractor."); *Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A.,* 540 So. 2d 113 (Fla. 1989); *Federal Insurance Co. v. Community State Bank*, 905 F.2d 112 (5th Cir. 1990); *United States Fidelity & Guaranty Company v. Housing Authority of the Town of Berwick*, 557 F.2d 482 (5th Cir. 1977); *See also In the Matter of J.V. Gleason Co., Inc.*, 452 F.2d 1219 (8th Cir. 1971) (subrogation right attaches even in the absence of a UCC-1 filing).  Here, however, Selective also recorded UCC-1 filing.

-12-

19.    Additionally, the Contract Funds, by virtue of the Trust Fund provision of the Indemnity Agreement, are dedicated to the completion of and payment of claims on the Bonded Project. In fact, under Georgia law, it is a crime act a contractor to use contract funds that should be used to pay subcontractors and suppliers on that project for some other purpose. O.C.G.A. § 16-8-15.

20.    Although the Contract Funds are not property of the estate, in an abundance of caution, Selective requests that the Court modify the stay to: (1) permit Selective to collect Bonded Contract Funds from owner on the Bonded Contract; and (2) to utilize said Bonded Contract Funds to pay claims under the Bonds issued by Selective on behalf of the Debtor, including costs incurred in completing any Bonded Contract, and/or to reimburse Selective for claims that it has already paid under the Bonds. *See Louisiana Industrial Coatings, Inc. v. Boh Bros. Constr. Co., Inc.*, 53 B.R. 464 (E.D. La. 1985).

21.    Alternatively, Selective is entitled to adequate protection of the Bonded Contract Funds to insure that they are used solely for direct Bonded Contract Costs.

22.    Bankruptcy courts have protected the surety's interest in contract funds by limiting the debtor's use of the contract funds to the bonded project and requiring the debtor to separately account for contract funds. *See In re RAM*

*Construction Co.*, 32 B.R. 758 (Bankr. W.D. Pa. 1983) (noting that "the surety would not be adequately protected if the Debtor was free to pay money received from the owners for Debtor's expenses on other contracts"); *see also* § 363(c)(4) (requiring the Debtor to "segregate and account for any cash collateral").

23.    Accordingly, Selective is entitled to adequate protection of the Bonded Contract Funds in the form of an Order requiring that the Bonded Contract Funds, as collected, be deposited into a separate trust account that requires the signature of the Debtor and Selective before funds can be disbursed, and an Order that the Bonded Contract Funds can be used only for direct Bonded Project costs, and not for other purposes, such as payment of officer salaries, home office overhead or other projects.

## <u>CONCLUSION</u>

The Bonded Contract Funds are not property of the estate, and Selective respectfully requests that the Court hold that the stay does not apply or lift the stay to allow Selective to: (1) collect Bonded Contract Funds from owner on the Bonded Contract; and (2) to utilize said Bonded Contract Funds to pay claims under the payment and performance bonds issued by Selective on behalf of the Debtor, including costs incurred in completing any Bonded Contract, and/or reimburse Selective for claims that it has already paid under the Bonds.

-14-

Alternatively, Selective is entitled to adequate protection of the Bonded Contract Funds in the form of an order requiring that the Bonded Contract Funds, as collected, be deposited into a separate trust account that requires the signature of the Debtor and Selective before funds can be disbursed, and an Order that the Bonded Contract Funds can be used only for direct Bonded Project costs, and/or to reimburse Selective for claims that it has already paid under the Bonds, and not for other purposes, such as payment of officer salaries, home office overhead or other projects.

Submitted: January 21, 2021.

/s/ Zack D. Anderson
Zack D. Anderson, Esq.
Georgia Bar No. 893340
One Atlantic Center
1201 West Peachtree Street, Suite 2610
Atlanta, Georgia 30309
(404) 870-8200  Telephone
(404) 870-3080  Facsimile
zanderson@mpdlegal.com
*Attorney for Selective Insurance
Company of America*

| | For Home Office Filing Purposes Only |
|---|---|
| **Selective Insurance Company of America** | Account Name: |
| Home Office; Attn: Bond SBU | |
| 40 Wantage Avenue | Sharpe Contractors, LLC |
| Branchville, NJ 07890 | |

## GENERAL AGREEMENT OF INDEMNITY

**THIS IS AN IMPORTANT DOCUMENT WHICH AFFECTS YOUR RESPONSIBILITIES AND OBLIGATIONS TO SELECTIVE INSURANCE COMPANY OF AMERICA WITH REGARD TO THE BOND FOR WHICH YOU HAVE APPLIED. READ THIS DOCUMENT CAREFULLY. IF YOU HAVE ANY QUESTIONS OR DO NOT UNDERSTAND IT FULLY, CONSULT WITH YOUR ATTORNEY BEFORE SIGNING IT.**

This General Agreement of Indemnity (hereinafter referred to as "Agreement") is made by each person, organization and other entity executing this Agreement under the designation Indemnitor, (hereinafter individually and collectively referred to as "Indemnitors") in favor of **SELECTIVE INSURANCE COMPANY OF AMERICA** its successors and assigns (hereinafter called "Surety").

WITNESSETH

WHEREAS, one or more of the Indemnitors, in connection with the performance of contracts and/or the transaction of business and/or the fulfillment of obligations generally, whether solely in its own name or as a co-adventurer with others, has heretofore desired, been required or may, in the future desire or be required to give or procure certain contracts of suretyship, guaranty or indemnity or other writings obligatory in nature, including continuations, extensions, alterations, renewals or substitutions thereof (hereinafter referred to as "Bond" or "Bonds") or Indemnitors may request Surety to refrain from canceling said Bonds; and

WHEREAS, Surety, at the request of one or more of the Indemnitors and because of the promises of the Indemnitors to execute this Agreement and the promises which are made by the Indemnitors in this Agreement, has executed or may in the future execute or procure the execution of one or more such Bonds on behalf of one or more of the Indemnitors.

NOW THEREFORE, in consideration of these premises, and the execution of any such Bond or Bonds whether executed before, simultaneously with or after the execution of this Agreement, the Indemnitors for themselves, their heirs, executors, administrators and successors, jointly and severally, agree with Surety, its successors and assigns, as follows:

1.      APPLICATION. This is a continuing Agreement that remains, unless canceled in accordance with the provisions hereof, in full force and effect as to all Indemnitors with respect to each and every Bond issued hereunder. This Agreement applies to any Bond executed prior to, contemporaneously with, or after the execution of this Agreement. Surety's acceptance, whether before, simultaneously with or after the execution of this Agreement, of the request, written or otherwise, from a representative who is believed by Surety to be an authorized agent of one or more of the Indemnitors shall in each instance bring within the provisions of this Agreement any Bond executed by or procured by Surety pursuant to such request and the liability of the Indemnitors hereunder shall not be affected by the failure of any Indemnitor signing such request or bond as a principal, indemnitor or otherwise.

2.      PREMIUMS. The Indemnitors are obligated to pay to Surety at 40 Wantage Avenue, Branchville, New Jersey 07890 (the "Home Office") in advance, the premiums or charges of Surety for each Bond or other instrument issued hereunder, and shall, where the premium or charge is annual, continue to pay same, until Surety has received written evidence satisfactory to it of its discharge or release from all liability on the Bond and in connection with all matters related thereto. If for any reason the price of any contract upon which a Bond is issued hereunder is increased, or additional work is performed under the contract for an additional charge, the Indemnitors will pay Surety additional premium at rates then in effect. Any increase in the price of any contract upon which a Bond is issued hereunder and any increase in the amount of any Bond, whether or not notice thereof is given to Indemnitors, shall not operate to discharge the obligations of Indemnitors hereunder to Surety.

3.      INDEMNITY; PAYMENTS; LOANS; EVIDENCE. The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, indemnify and save harmless Surety (and any surety that Surety procures to execute any Bond and any other surety with which Surety may act as co-surety on any Bond or other instrument) from and against any and all liability, loss, cost, damage and expense of whatsoever kind or nature, including, but not limited to, interest, court costs and counsel, attorneys, consulting, accounting and other professional and trade fees, whether incurred on a flat fee per claim, percentage, time and material, hourly or other basis, (including the cost of in-house professionals) which Surety may sustain, incur, be put to or to which it may be exposed (1) by reason of having executed any Bond or other instrument or any renewal, modification, continuation, substitution or extension thereof, (2) by reason of the failure of any one or more of the Indemnitors to perform or comply with the promises, covenants and conditions of this

Indemnitor's initials: **M P**     Indemnitor's initials: **TS**     Indemnitor's initials: _____     Indemnitor's initials: _____

Indemnitor's initials: **SS**     Indemnitor's initials: _____     Indemnitor's initials: _____     Indemnitor's initials: _____


EXHIBIT
A

Agreement or, (3) in enforcing any of the promises, covenants or conditions of this Agreement. The liability of the Indemnitors shall extend to and include the amount of all payments, together with interest thereon at the rate of prime as published by the Wall Street Journal (or similar national financial publication should the Wall Street Journal cease to publish such rates) plus two points from the date of such payments, made by Surety under Surety's belief that (1) Surety was or might be liable therefor or (2) the payments were necessary or advisable to protect any of Surety's rights or to avoid or lessen Surety's liability or alleged liability. While the Surety shall be under no obligation to advance or loan money to any Indemnitor, the liability of the Indemnitors shall also extend to any loans or advances, including any interest thereon, made by or guaranteed by Surety for the benefit of one or more of the Indemnitors, without any obligation on Surety's part to see to the application thereof. Payment by reason of the aforesaid causes shall be made by the Indemnitors to the Surety at its Home Office in Branchville, New Jersey as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Indemnitors agree that the vouchers or other evidence of such payments sworn to by a duly authorized representative of Surety shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to Surety.

4.      DEMANDS FOR COLLATERAL. If Surety or any reinsurer shall establish a reserve to cover any liability, claim asserted, suit, award or judgment in connection with any Bond, or any loss, cost, expense or fee in connection therewith, the Indemnitors, immediately upon demand (the "Collateral Demand"), whether or not Surety shall have made any payment therefor and whether or not the collateral demanded may be in addition to other collateral security previously provided to Surety, shall provide to Surety at its Home Office, funds and/or other collateral security, which Surety in its sole discretion deems adequate, equal in value to such reserve and any increase thereof as collateral security on such Bond. Such funds and any other property previously provided to Surety shall be deemed collateral security and shall be available to Surety for any indebtedness of the Indemnitors to Surety. Such collateral security shall be held subject to the terms of this Agreement. If the Indemnitors fail to provide Surety with sufficient collateral after a Collateral Demand, they shall be in default of this Agreement. Indemnitors agree that their failure to provide collateral as demanded by Surety shall constitute irreparable harm to Surety for which it has no adequate remedy at law and that Surety may obtain injunctive relief compelling the delivery to Surety of sufficient collateral or in the alternative, Surety may obtain a judgment against each or any of the Indemnitors for the amount of the Collateral Demand plus the costs of obtaining the judgment, including its attorneys fees by any legal or equitable process. Any Collateral Demand reduced to a judgment may be immediately executed upon and any asset of an Indemnitor levied upon may either be held as collateral or liquidated in any manner deemed appropriate by Surety, including private or judicial sale. The proceeds of such liquidated assets may be held by Surety as collateral and applied to any of the Indemnitors' obligations to Surety arising under this Agreement or otherwise.

5.      ASSIGNMENTS; WHEN EFFECTIVE. The Indemnitors do hereby assign, transfer, pledge and convey to Surety as collateral security to secure the obligations of the Indemnitors hereunder, under the Bonds and with respect to any other liability or indebtedness of the Indemnitors to Surety whether heretofore or hereinafter incurred:

(A)     All moneys due or to become due to the Indemnitors and all rights title and interest of the Indemnitors in, or growing in any manner out of, or in any way related to, any contract in which the Indemnitors or any of them may have an interest, whether or not bonded by Surety, now existing or hereafter acquired and any extensions, modifications, changes, alterations or additions thereto, including, but not limited to, any and all sums due or that may become due under any contract, compensation for extra work and claims and the proceeds of any insurance policies payable to any of the Indemnitors;

(B)     All subcontracts and purchase orders let or to be let by any of the Indemnitors and all rights, actions, causes of action, claims and demands of whatsoever kind which any of the Indemnitors may now have or hereafter acquire with respect to any contract or any subcontract or purchase order or any bonds given to any Indemnitor by any subcontractor or vendor in connection with any contract;

(C)     All right, title and interest of the Indemnitors in and to any contract, any sums due under any contract and any and all rights under contract, the work and all supplies, tools, plant, machinery, equipment and materials of whatsoever kind that may then or thereafter be upon the work, or in, on or about the site thereof, and all materials purchased for or chargeable to any contract which may be in the process of manufacture or construction, or in transportation or in storage elsewhere in connection with any contract whether or not bonded by Surety and the proceeds of any insurance policies issued with respect thereto;

(D)     All other personal property now owned or hereafter acquired by each of the Indemnitors, including goods, documents, instruments, general intangibles, accounts, chattel paper, accounts receivable, notes receivable, choses in action, policies of life, casualty and liability insurance and proceeds of life, casualty and liability insurance and proceeds of collateral;

(E)     The rights provided to Surety under the assignments herein granted may be exercised by Surety immediately on the occurrence of any one or more of the following events or upon Surety's apprehension that any one or more of the following may occur, any which shall constitute an event of default under this Agreement allowing the Surety to exercise any remedy available under this Agreement, at law or in equity:

(1) Any abandonment, forfeiture, or breach of, or failure, refusal or inability to perform, the terms and provisions of any contract with respect to which a Bond or other instrument has been executed by Surety or demand by an obligee against a Bond alleging a default of a bonded obligation;

Indemnitor's initials: _MP_    Indemnitor's initials: _TS_    Indemnitor's initials: _____    Indemnitor's initials: _____

Indemnitor's initials: _____    Indemnitor's initials: _____    Indemnitor's initials: _____    Indemnitor's initials: _____

(2) The failure, delay, refusal or inability of an Indemnitor to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract with respect to which a Bond or other instrument has been executed by Surety;

(3) The failure, refusal or inability of an Indemnitor to satisfy any of the conditions of any such Bond or other instrument executed by Surety;

(4) The failure of an Indemnitor to perform, or comply with, any of the promises, covenants and obligations of this Agreement;

(5) The failure of any Indemnitor to pay and discharge, when due, any other indebtedness of any Indemnitor to Surety;

(6) Any assignment by an Indemnitor for the benefit of creditors, any appointment or application for the appointment of a receiver or trustee, or any voluntary or involuntary filing of a petition under Title 11 of the United States Code as to any Indemnitor whether insolvent or not;

(7) Any proceeding which deprives an Indemnitor of the use or interferes with the Indemnitor's use of any supplies, tools, plant, machinery, equipment or materials required for the performance of any contract with respect to which Surety has issued any Bond;

(8) the transfer by an Indemnitor of more than 10% of his assets to another without consideration; or,

(9) An Indemnitor's death, disappearance, incompetence, conviction of a felony, or imprisonment, if the Indemnitor is an individual.

(F)    In the event the assignments become operative as provided above, in addition to any other remedies Surety may have, the Indemnitors authorize and empower Surety in its sole discretion and to the extent it deems appropriate, but without any obligation to take action:

(1) To assert, pursue, prosecute, compromise or settle in whole or in part at the Indemnitors' expense all of the rights, actions, causes of action, claims and demands assigned. Further, the Indemnitors hereby authorize the Surety, at its option and in its sole discretion, to prosecute said assigned rights in the name of the Surety or in that of the Indemnitors and to endorse in the name of the payee, and to collect any checks, drafts, warrants or other instruments made or issued in payment of any such assigned rights and to disburse the proceeds thereof; and

(2) To take possession of all or any part of the work under any contract or contracts covered by any said Bonds (together with all associated supplies, tools, plant, machinery, equipment, materials, job books, records, drawings and plans), at the Indemnitors' expense to complete all or any part of the work, or to re-let or consent to the re-letting or completion of the contract or contracts secured by any Bond, and the Indemnitors shall promptly repay to the Surety all losses, and expenses so incurred.

6.    DISPOSITION OF COLLATERAL. Surety may pledge, assign, mortgage, transfer, convey, sell or otherwise liquidate or dispose of any property assigned to it pursuant to this Agreement, or heretofore or hereafter provided or pledged to Surety for any purpose, or which may otherwise be in the possession of Surety, without incurring any liability of whatsoever kind. The sale may be public or private and with or without notice of the time or place thereof. Surety is hereby authorized to settle any of its claims against, or release or compromise any collateral security of any one or more of the Indemnitors severally and such settlement or release of collateral shall not affect the liability of any of the others to Surety nor shall they be discharged in whole or in part by reason of the settlement or release in whole or in part of one or more of the Indemnitors of their obligations hereunder. When all liability of Surety under the Bond(s) or other instrument(s) issued by Surety is terminated, any balance remaining in the possession of Surety after Surety has paid or reimbursed itself for all indebtedness of any Indemnitor under this Agreement or otherwise shall be returned to the Indemnitors. The Surety shall have no obligation to: invest, collect interest or dividends, or to provide a return on, the deposit, exercise any rights of the Indemnitors, make presentment, demand or protest, or take any action to protect or enforce the collateral. The Indemnitors agree that the Surety shall not be liable for depreciation of the collateral, investment of the collateral, or any failure to perform or not perform any of the aforementioned acts. Further, the Indemnitors agree that the Surety shall not be required to exhaust its recourse against Principal on any Bond or against any Indemnitor, but the Surety may resort to the collateral without recourse to such parties. The Indemnitors waive any and all defenses against the Surety based upon the taking or release of other indemnity or collateral.

7.    SETTLEMENTS AND COMPROMISES Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds procured or executed by it and Surety's decision thereon shall be final and binding upon the Indemnitors. Surety shall be entitled to apply any collateral security held by it under this Agreement or any collateral security agreement between it and any of the Indemnitors to the satisfaction of or in reimbursement of Surety as a result of its satisfaction of any claim, demand, suit or judgment upon any of the Bonds procured or executed by it and to the direct payment of or reimbursement to itself of interest, costs, expenses and counsel and other professional or consulting fees incurred by it as a result of its having executed or procured any Bond. Surety shall at all times have the right but not the obligation to retain the counsel and experts of its choice to defend itself from any claim, lien, levy, liability, suit or judgment brought against Surety on any Bond or against any job funds or collateral security held by Surety or an Obligee on any Bond, including retainages or to prosecute an action to preserve Surety's rights with respect to collateral security, contract funds, trust funds or liens on any bonded project and the cost of retaining such counsel and experts shall fall within the Indemnitors' obligation to indemnify, exonerate and hold Surety harmless.

Indemnitor's initials: _MP_    Indemnitor's initials: _TS_    Indemnitor's initials: _____    Indemnitor's initials: _____

Indemnitor's initials: _(S)_    Indemnitor's initials: _____    Indemnitor's initials: _____    Indemnitor's initials: _____

8.    INVALIDITY OR RELEASE AS TO ONE OR MORE INDEMNITORS. If for any reason this Agreement is invalid as to any Indemnitor or if any Indemnitor's obligations or liability under this Agreement is terminated in the manner herein provided or otherwise by operation of law or by settlement between the Surety and any such Indemnitor, the remaining Indemnitors shall nevertheless be bound hereunder, for the full amount of liability, losses and expenses which Surety may sustain or incur.

9.    WAIVER OF NOTICE; CHANGES. Indemnitors waive notice of: (1) the execution of any Bond or any continuation, extension, modification, renewal or substitution thereof; (2) any default or any other event that may give rise to or increase liability under any Bond or under this Agreement; (3) any settlement or compromise between Surety and another Indemnitor; (4) any disposition or compromise of collateral; and (5) any payment or settlement of a claim against a Bond. The Surety in its sole discretion is authorized and empowered without notice to or knowledge of the Indemnitors, notice being hereby expressly waived, to assent, or to refuse to assent, to any change or modification whatsoever in such Bond and/or contracts and/or in the general conditions, plans or specifications which accompany said contracts, including, but not limited to, any change in the time for completion of said contracts and to payments or advances thereunder before the same may be due, and to assent, or refuse to assent, to or take any assignment or assignments, and to execute, or consent to the execution of, any continuation, extension or renewal of the Bond and to execute any substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties all without notice to or knowledge of the Indemnitors; it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent or refusal to assent by the Surety does or might substantially increase the liability of the Indemnitors; and that the Indemnitors shall be liable to the Surety pursuant to this Agreement on account of any such altered, changed, modified, amended, limited, renewed, substituted, or extended Bond even if the change substantially increases the Indemnitors' liability.    The Indemnitors hereby waive notice of the execution of any Bond and of any act, fact or information concerning or affecting the rights or liabilities of the Surety or the rights or liabilities of the Indemnitors

10. .    TRUST FUNDS. If any of the Bonds or other instruments are executed by Surety in connection with the performance of a contract, the entire contract price or other consideration to be received by an Indemnitor, whether received as payments or loans, shall be dedicated to the satisfaction of the conditions of the Bond(s) or other instrument(s). All consideration, including all funds paid, due or to become due and all securities, warrants, checks or other evidence of indebtedness and the proceeds thereof, given upon or under any contract in connection with which Surety shall have issued a Bond ("Trust Funds") shall be impressed with a trust in favor of and for the benefit of laborers, materialmen, suppliers, subcontractors and Surety for the exclusive purpose of satisfying the conditions of the Bonds. In the event of a default by any Indemnitor in the performance or compliance with any promise, covenant or obligation under this agreement, the Surety may demand and the Indemnitors shall cause all funds or the proceeds of all consideration received or to be received from any contract referred to in any Bond to be deposited into separate trust accounts with a bank or similar depository designated by Surety and such accounts shall be controlled by an escrow agent to be designated by Surety. If any of the Bonds or other instruments are executed by Surety to assure that funds collected by an Indemnitor, or any taxable or chargeable portion thereof, are paid to a third party obligee, all such funds received by such Indemnitor shall be impressed with a trust in favor of and for the benefit of such obligee and Surety for the exclusive purpose of satisfying the conditions of the Bonds and each Indemnitor who exercises control or has the ability to exercise control over the collection and application of such trust funds shall have a fiduciary duty owing to the Surety to segregate such trust funds and cause such trust funds to be paid to the obligee. In the event of a default by any Indemnitor in the performance or compliance with any promise, covenant or obligation under this agreement, the Surety may demand and the Indemnitors shall cause all such trust funds to be deposited into separate trust accounts with a bank or similar depository designated by Surety and such accounts shall be controlled by an escrow agent to be designated by Surety.

11.    COVENANT NOT TO ASSIGN BONDED CONTRACT PROCEEDS. Indemnitors warrant that, with respect to any contract for which Surety has or may issue a Bond, undertaking or instrument, the Indemnitors have not and shall not assign, except as collateral, its rights to receive payments from such contract to any other person or entity without the express written consent of Surety. Indemnitors agree that any consent by Surety to such assignment shall not operate to discharge, diminish or lessen their obligations to Surety hereunder with respect to such contract. Indemnitors agree and acknowledge that if one or more of the Indemnitors assigned or does assign its right to receive payments to a third party, except as collateral, without Surety's written consent, or in the event a collateral assignment of its right to receive payments becomes effective, the Indemnitors shall upon Surety's demand, procure the discharge of Surety from the Bond of such assigned contract or the Indemnitors shall immediately deposit with Surety cash collateral equal to the penal sum of the Bond issued on such contract; if the Indemnitors do not procure the discharge of Surety or they do not deposit the requisite collateral with Surety, Surety may, in addition to any other remedy available, obtain a judgment against the Indemnitors for the penal sum of the Bond plus costs of suit and attorneys fees.

12.    BOOKS, RECORDS & CREDIT REPORTS. Indemnitors warrant and represent that any financial information furnished by any Indemnitor to Surety is true and accurate and acknowledge that Surety has and will continue to rely upon such information in executing any Bond. Indemnitors shall have a continuing obligation to provide current financial information to Surety until such time as all obligations of the Indemnitors hereunder have been discharged. Surety, at any time, shall have continuous and uninterrupted

Indemnitor's initials: _MP_    Indemnitor's initials: _TS_    Indemnitor's initials: _____    Indemnitor's initials: _____

Indemnitor's initials: _(S)_    Indemnitor's initials: _____    Indemnitor's initials: _____    Indemnitor's initials: _____

access to the books, records, accounts and nonconsumer and consumer credit reports of the Indemnitors and to all matters and information concerning any Bond(s) or instrument(s) executed by Surety and the financial condition, credit worthiness and assets of any Indemnitor until the liability of Surety under each and every Bond or other instrument executed by it and each and every obligation of the Indemnitors under this Agreement is terminated and discharged to the satisfaction of Surety. Banks, depositories, consumer credit reporting agencies, materialmen, supply houses, obligees on the Bonds and all other persons and organizations are hereby authorized to furnish Surety, at its request, any information (including copies thereof) requested including, but not limited to, consumer credit reports of any individual Indemnitor, the status of work under contracts being performed by an Indemnitor, the condition of the performance of such contracts and payments of such accounts. Regarding consumer credit reports, each Indemnitor agrees that a photocopy of this agreement shall constitute a written request of the Indemnitor which the Surety may present to a Consumer Credit Reporting Agency as proof of Surety's authority to obtain a Consumer Report as defined under the Fair Credit Reporting Act.

13.    SURETY'S RIGHT TO DECLINE EXECUTION. Surety may decline to execute any Bond for which request is made without incurring any liability to and without affecting the obligations of the Indemnitors on any other Bond or Bonds issued hereunder. Notwithstanding that Surety may have executed a bid or proposal bond in connection with any proposed contract, Surety shall have the right to decline to execute any performance, payment or other bond that may have been required in connection with the award of such contract without incurring any liability to the Indemnitors and without affecting the obligations of the Indemnitors with respect to the bid or proposal bond and the Indemnitors agree that they shall make no claim against Surety for declining to execute any such bond.

14.    WAIVER OF PROPERTY AND HOMESTEAD EXEMPTION. The Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of the United States or any State, Territory or Possession. Indemnitors agree to provide immediate notice to Surety of any change of their domicile or principal place of business.

15.    TERMINATION OF INDEMNITY ON FUTURE BONDS. Any of the Indemnitors other than those Indemnitors designated as a principal in a Bond, shall have the right at any time to request cancellation of this Agreement as to him by delivering written notice of such request to Surety at the Home Office of Selective Insurance Company of America at 40 Wantage Avenue, Branchville, NJ 07890; Attention: Bond SBU. Such cancellation shall not become effective until the earlier of thirty (30) days after Surety's actual receipt of such notice or the date of written acceptance thereof by Surety. Such cancellation shall not relieve such Indemnitor from liability for any Bond or other instrument executed by Surety prior to the date of such cancellation, nor shall it affect the future liability of the Indemnitors who do not request cancellation.

16.    REQUIRED NOTICE TO SURETY; ADDRESS FOR NOTICE. The Indemnitors will immediately notify Surety in writing at the Home Office of Selective Insurance Company of America of: any suit, action or proceeding growing out of or relating to any Bond or other instrument executed by Surety on behalf of the Indemnitors or any one of them; or any notice or knowledge they receive that the liability insurance of an Indemnitor named as a principal in a Bond has been or will be canceled, terminated or non-renewed for any reason or that such coverage will be reduced; any filing by an Indemnitor of an assignment for the benefit of creditors or any filing of a petition in bankruptcy under the federal bankruptcy act either by or against any Indemnitor. All such notice must be addressed to:      Selective Insurance Company of America
                 Attention: Bond SBU
                 40 Wantage Avenue.
                 Branchville, NJ 07890

17.    ATTORNEY-IN-FACT. The Indemnitors hereby irrevocably nominate, constitute, appoint and designate Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Indemnitors assigned, transferred and conveyed to Surety in this Agreement, and in the name of any Indemnitor, to make, execute or endorse and deliver any and all additional or other assignments, vouchers, financing statements, mortgages, releases, satisfactions, checks, drafts, notes, certificates of deposit, letters of credit, deeds, bills of sale, authorizations (including an authorization on behalf of the Principal or any Indemnitor to release information), documents or papers, including any agreement under §49.404(e)(4) of the Federal Acquisition Regulation or any direction or authorization under 48 Code of Federal Regulations §28.106-7, deemed necessary and proper by Surety in order to give full effect not only of the intent and meaning of the within assignments, but also to the full protection intended to be given herein to Surety under all other provisions of this Agreement, the Bond(s) or otherwise. The Indemnitors hereby ratify and affirm all acts and actions taken and done by Surety as such attorney-in-fact. The Indemnitors waive any and all claims they had, now have or may ever in the future have against Surety as a result of its having taken any action or done any thing as such attorney-in-fact or otherwise under this agreement.

Indemnitor's initials: _MP_   Indemnitor's initials: _TS_   Indemnitor's initials: _____   Indemnitor's initials: _____

Indemnitor's initials: _____   Indemnitor's initials: _____   Indemnitor's initials: _____   Indemnitor's initials: _____

18.     UNIFORM COMMERCIAL CODE. This Agreement shall constitute a Security Agreement to Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of this Agreement shall be solely at the option of the Surety, and the failure to do so shall not release or impair any of the obligations of the Indemnitors to the Surety under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of the rights of the Surety under this Agreement or otherwise. The Surety may record or file this Agreement or any other document executed by any of the Indemnitors or by the Surety under the power of attorney herein granted. For the purpose of recording this Agreement a photocopy acknowledged before a Notary Public to be a true copy hereof shall be regarded as an original.

19.     RISK OF BOND TERMS. Each Indemnitor acknowledges that the Surety has no duty, express or implied, to review any contract, bond or other form of document by or on behalf of any Indemnitor and that the Surety's execution of any bond is not to be construed as a representation of any kind, explicit or implied, as to the reasonableness of the terms and conditions contained therein or within any contract referenced in such bond, the risks of which are, first and foremost, the responsibility of the Indemnitors requesting the execution of such bond.

20.     CUMULATIVE RIGHTS. Surety's rights under this Agreement are cumulative with, and in addition to, all other rights of Surety, however derived. Surety is not required to exhaust its rights or remedies against any Indemnitor or to await receipt of any final dividends from the estate or legal representative of any Indemnitor or the receipt of proceeds from any assignment herein granted before asserting its rights hereunder or commencing any action or proceeding against any other Indemnitor.

21.     LIBERAL CONSTRUCTION. This Agreement shall be liberally construed so as to protect and indemnify Surety and any company that Surety may procure to execute any Bond or that may join with Surety as co-surety or be or become reinsurer on any Bond, any of whom shall, after obtaining the written consent of the Surety, be deemed to have a direct right of action under this Agreement against the Indemnitors.

22.     INVALIDITY OF PROVISIONS; SEVERABILITY. If any provision or provisions of this Agreement be deemed void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be voided or terminated thereby, but shall be enforced with the same effect as though such provision were omitted.

23.     SUITS AND PROCEEDINGS. Separate suits or proceedings may be brought by Surety on this Agreement as causes of action accrue. Any suit or other proceeding brought by Surety or the recovery of judgment upon any cause of action by Surety shall not prejudice or bar other suits or proceedings by Surety upon other causes of action, whether theretofore or thereafter arising. The Indemnitors submit to the jurisdiction of the state and federal courts situate in New Jersey, waiving any defenses of lack of personal jurisdiction and waiving venue arguments, including forum non conveniens, in any action brought by Surety in the State of New Jersey. Surety reserves the right to bring an action in any state where an Indemnitor has substantial contacts or where a project covered by a bond subject to this agreement is located or where a claimant brings suit against Surety on a bond covered by this agreement and Indemnitors agree to submit to the jurisdiction of the courts in such state.

24.     WAIVER OF TRIAL BY JURY. The Indemnitors and the Surety each hereby waive trial by jury in any action or proceeding to which any or all of the Indemnitors and the Surety may be parties, arising out of or in any way pertaining to this Agreement. It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such actions or proceedings, including claims against parties who are not parties to this Agreement. This waiver is knowingly, willingly and voluntarily made by the Indemnitors and the Surety and the Indemnitors and the Surety each represent and warrant that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.

25.     INDEMNITORS' OBLIGATION TO COOPERATE. The Indemnitors shall give the Surety prompt notice of any claim, demand, suit, arbitration proceeding or other action that purports to be instituted on any Bond or of any levy by the Internal Revenue Service or any other creditor on Trust Funds, whether such funds are held by an obligee or an Indemnitor and shall fully cooperate with the Surety in the defense thereof.

26.     CONTRIBUTION. Each Indemnitor assigns to Surety its claims against every other Indemnitor for contribution, subrogation or indemnification.

27.     INDEMNITORS TO OBTAIN RELEASE OF SURETY. The Indemnitors will, at the request of the Surety, procure the discharge of the Surety from any Bond and all liability by reason thereof

Indemnitor's initials: __MP__    Indemnitor's initials: __YS__    Indemnitor's initials: _____    Indemnitor's initials: _____

Indemnitor's initials: _____    Indemnitor's initials: _____    Indemnitor's initials: _____    Indemnitor's initials: _____

28.    INDEMNITORS RIGHT TO CONSULT COUNSEL. Indemnitors represent and warrant that each of them has carefully read and understands this agreement and has had or waived the opportunity to confer with counsel concerning it.

29.    HOW TO MAKE CHANGES TO THIS AGREEMENT. By signing this agreement, the undersigned Indemnitors agree to be bound by all terms and conditions as set out in the original typeset, it being understood that additions, alterations and strikethroughs are void and of no effect and do not constitute an offer or counteroffer. The undersigned acknowledge and agree that the only way to change any term of this agreement as typeset is by an addendum that is counter-signed by an officer of the Surety. Indemnitors understand that this Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed by Surety to form a part hereof. **DO NOT SIGN THIS AGREEMENT UNLESS YOU INTEND TO BE BOUND BY ITS TERMS AS SET OUT IN THE ORIGINAL TYPESET OR YOU ARE IN POSSESSION OF AN ADDENDUM SIGNED BY THE SURETY.**

IN WITNESS WHEREOF, we have signed and sealed this Agreement to be effective the 3rd day of August , 20 17 .

**ATTEST/WITNESS**

**Business Indemnitor:**

Sharpe Contractors, LLC

By: _____

Theodore Shane Travis Sharpe          Managing Member
(print name and title above)

Tax ID #: _____

Business Address: 3479 Lawrenceville-Suwanee Rd.

| Suite B | | |
|---|---|---|
| Suwanee | GA | 30024 |

**BUSINESS ACKNOWLEDGMENT**

State of Georgia

County of Gwinnett

On this 3rd day of August , 20 17 , personally came before me, _Theodore Shane Travis Sharpe_

who is the Managing Member of Sharpe Contractors, LLC
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (seal)
Notary Public
My Commission Expires: 7-24-20

KAREN HERRERA
NOTARY PUBLIC
Gwinnett County
State of Georgia
My Comm. Expires July 24, 2020

**ATTEST/WITNESS**

_Keyur Patel_

Tax ID #: ███████████

**Business Indemnitor:**

NRE Hospitality, LLC_____ (SEAL)

By: _____

Madhava Patel, Sole Member_____
(print name and title above)

Business Address: _____

4485 Tench Road, Suite 810_____

Suwanee, GA 30024_____

## BUSINESS ACKNOWLEDGMENT

State of
County of

On this 3RD day of AUGUST_____ , 20 17 , personally came before me, Madhava Patel_____

who is the _____Sole Member_____ of _NRE Hospitality, LLC_____
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the
act of said business entity.

> PALAK SHAH
> Official Seal
> Notary Public - State of Illinois
> My Commission Expires May 18, 2018

_____ (seal)
Notary Public
My Commission Expires: 05|18|18

**ATTEST/WITNESS**

_____

Tax ID #: _____

**Business Indemnitor:**

_____ (SEAL)

By: _____

_____
(print name and title above)

Business Address: _____

_____

_____

## BUSINESS ACKNOWLEDGMENT

State of
County of

On this_____ day of_____ , 20 _____ , personally came before me, _____

who is the _____ of _____
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the
act of said business entity.

_____ (seal)
Notary Public
My Commission Expires:

**ATTEST/WITNESS**                                    Business Indemnitor:

_____          _____ (SEAL)

_____          By:_____

                                 _____
                                      (print name and title above)

Tax ID #: _____         Business Address:_____

                                 _____

                                 _____

**BUSINESS ACKNOWLEDGMENT**

State of _Georgia_
County of _Gwinnett_

On this _3rd_ day of _August_ , 20 _17_ , personally came before me,_____

who is the _____          of _____

to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the
act of said business entity.

                                 _____ (seal)
                                 Notary Public
                                 My Commission Expires:

WITNESS:

_Karen Herrera_                  **Individual Indemnitor:**

                                 Signature: _____
                                 Printed Name: _Theodore Shane Travis Sharpe_
                                 Home Address: _4730 Prestbury Drive_

                                 | Suwanee | GA | 30024 |

                                 Social Security # _____

WITNESS:

_Karen Herrera_                  **Individual Indemnitor:**

                                 Signature: _____
                                 Printed Name: _Tiffany Anne Sharpe_
                                 Home Address: _4730 Prestbury Drive_

                                 | Suwanee | GA | 30024 |

                                 Social Security # _____

**INDIVIDUAL ACKNOWLEDGMENT(S)**

State of _Georgia_
County of _Gwinnett_

On this _3rd_ day of _August_ , 20 _17_ , personally came before me, _Theodore Shane Travis Sharpe_

and _Tiffany Anne Sharpe_ to me known to be the individual(s) who executed the foregoing instrument and
acknowledged that he/she/they executed the same as their voluntary act and deed.

                                 _Karen Herrera_ _____ (seal)

| KAREN HERRERA |
| NOTARY PUBLIC |
| Gwinnett County |
| State of Georgia |
| My Comm. Expires July 24, 2020 |

Notary Public
My Commission Expires: _7-24-20_

B13 (01/10)

WITNESS:

_____

**Individual Indemnitor:**

Signature: _____

Printed Name: _____

Home Address: _____

_____

Social Security # _____

WITNESS:

_____

**Individual Indemnitor:**

Signature: _____

Printed Name: _____

Home Address: _____

Social Security # _____

### INDIVIDUAL ACKNOWLEDGMENT(S)

State of
County of

On this _____ day of _____ , 20 _____ , personally came before me, _____

and _____ to me known to be the individual(s) who executed the foregoing instrument and
acknowledged that he/she/they executed the same as their voluntary act and deed.

_____(seal)
Notary Public
My Commission Expires:

WITNESS:

_____

**Individual Indemnitor:**

Signature: _____

Printed Name: _____

Home Address: _____

_____

Social Security # _____

WITNESS:

_____

**Individual Indemnitor:**

Signature: _____

Printed Name: _____

Home Address: _____

_____

Social Security # _____

## INDIVIDUAL ACKNOWLEDGMENT(S)

State of
County of

On this _____ day of _____ , 20_____ , personally came before me, _____

and _____ to me known to be the individual(s) who executed the foregoing instrument and acknowledged that he/she/they executed the same as their voluntary act and deed.


_____(seal)
Notary Public
My Commission Expires:

**WITNESS:**

_____

**Individual Indemnitor:**

Signature: _____

Printed Name: _____

Home Address: _____

_____

Social Security # _____

**WITNESS:**

_____

**Individual Indemnitor:**

Signature: _____

Printed Name: _____

Home Address: _____

_____

Social Security # _____

## INDIVIDUAL ACKNOWLEDGMENT(S)

State of
County of

On this _____ day of _____ , 20_ , personally came before me, _____

and _____ to me known to be the individual(s) who executed the foregoing instrument and acknowledged that he/she/they executed the same as their voluntary act and deed.


_____(seal)
Notary Public
My Commission Expires:

FILED - MB
GLYNN CO. CLERK'S OFFICE
4/16/2020 5:35 PM
CASE # CE20-00484

*Ronald M. Adams*
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

Carolinas Construction Solutions, LLC
    Plaintiff

v

                                  Civil Action File Number CE20-00484

                                  JUDICIAL OFFICER: JUDGE GUY

Selective Insurance Company of America
and Sharpe Contractors, LLC
    Defendants

### COMPLAINT

Comes now Plaintiff Carolinas Construction Solutions, LLC and files this complaint against Selective Insurance Company of America and Sharpe Contractors, LLC and states as follows:

1. Carolinas Construction Solutions, LLC ("CCS") is a foreign limited liability company that is registered with the Georgia Secretary of State. CCS subjects itself to the jurisdiction of this Court.

2. Selective Insurance Company of America ("Selective") is a foreign insurance company.

3. Selective may be served with process via its registered agent for service Corporation Service Company at 40 Technology Parkway South, Suite 300 Norcross, Gwinnett County, Georgia 30092.

4. Selective is subject to the jurisdiction of this Court.

5. Sharpe Contractors, LLC ("Sharpe") is a domestic limited liability company. Sharpe may be served via its registered agent for service Shane Sharpe at 425 Buford Highway, Suite 204, Suwanee, Gwinnett County, Georgia 30024.

6. Sharpe is subject to the jurisdiction of this Court.

7. Venue is proper in Glynn County.



EXHIBIT
B

8. Upon information and belief Sharpe, as general contractor, entered into a contract with the The Dixon Management Group, Inc. ("Dixon") for Sharpe to provide labor and materials for the construction of a Holiday Inn Express & Suite Project located at 236 Gateway Center Blvd, Brunswick, Georgia 31525 ("Project").

9. Upon information and belief Sharpe entered into a subcontract with Chris A Hale Co., LLC d/b/a Henry County Electric ("Hale") for Hale to provide labor and materials relating to electrical work at the Project.

10. Hale contracted with CCS for CCS to provide labor to Hale for use at the Project.

11. On or about February 7, 2018 a Notice of Commencement was filed in the Superior Court of Glynn County relating to the Project. A true and accurate copy of the Notice of Commencement is attached hereto as **Exhibit "1"** and is incorporated herein by reference.

12. Within 30 days after CCS first provided labor to the Project, it sent a Notice to Contractor to Dixon and Sharpe, among others, pursuant to O.C.G.A. §44-14-361.5. A true and accurate copy of the Notice to Contractor is attached hereto as **Exhibit "2"** and is incorporated herein by reference.

13. The Notice to Contractor was received by Sharpe on April 8, 2019.

14. The Notice to Contractor was received by Dixon on April 8, 2019.

15. The Notice to Contractor requested that Sharpe send a copy of the Notice of Commencement to CCS' agent, Nationwide Notice, Inc. ("Nationwide")

16. Sharpe did not send a copy of the Notice of Commencement to Nationwide within 10 days after the request to do so.

17. On or about February 23, 2018 Selective and Sharpe executed payment bond ("Payment Bond") number B1197567 naming Selective as the surety and Sharpe as the principal for the Project. A true and accurate copy of the Bond is attached hereto as **Exhibit "3"** and is incorporated herein by reference.

18. On September 5, 2019, due to non-payment from Hale, CCS filed a claim of lien ("Claim of Lien") against the Property. A true and accurate copy of the Lien is attached hereto as **Exhibit "4"** and is incorporated herein by reference.

19. A true and accurate copy of the Claim of Lien was mailed via certified mail to Sharpe, Dixon and Hale on September 5, 2019.

20. A copy of the Lien was received via certified mail by Sharpe on September 9, 2019 at 2:10 PM.

21. A copy of the Lien was received via certified mail by Dixon on September 9, 2019 at 11:01 a.m.

22. The Lien states that the principal amount due is $161,732.86.

23. The Lien states that the labor provided by CCS was provided to Hale.

24. On December 5, 2019 CCS sent a letter to Selective via FEDEX advising Selective that CCS was asserting a claim against the Bond ("Payment Bond Claim"). A true and accurate copy of the December 5, 2019 letter is attached hereto as **Exhibit "5"** and is incorporated herein by reference.

25. A copy of the December 5, 2019 letter referenced above was sent via FEDEX to Sharpe and Dixon as well.

26. The December 5, 2019 letter stated, among other things, that CCS supplied labor to Hale for the Project and that CCS was owed the principal sum of $161,732.86.

27. The December 5, 2019 letter stated, among other things, that a demand for payment was being made against the Bond.

28. In a letter dated January 3, 2020. Selective acknowledged receipt of a potential payment bond claim against the Bond. A true and accurate copy of Selective's January 3, 2020 letter is attached hereto as **Exhibit "6"** and is incorporated herein by reference.

29. In the January 3, 2020 letter, Selected requested that CCS execute a Proof of Claim and Affidavit of Laborer, Materialman or Subcontractor" ("Proof of Claim Form") and to provide documentation or other evidence that proves the claim.

30. In a letter dated January 16, 2020 CCS through counsel sent Selective the filled out Proof of Claim Form and all of the documents that CCS contends supported

its Bond Claim. A true and accurate copy of the January 16, 2020 letter is attached hereto as **Exhibit "7"** and is incorporated herein by reference.

31. On or around March 5, 2020 Douglas Allen at Forcon represented to counsel for CCS that he was reviewing the Payment Bond claim and sent an e mail to counsel for CCS attaching the documentation that CCS has sent to Selective on January 16, 2020. A true and accurate copy of the March 5, 2020 e mail is attached hereto as **Exhibit "8"** and is incorporated herein by reference.

32. Selective nor Sharpe have rejected the Payment Bond Claim or paid the Payment Bond Claim within 45 days after January 16, 2020.

33. To date Selective and Sharpe have not paid the Payment Bond Claim.

34. On February 18, 2020 Sharpe and Selective issued a Release of Mechanic's Lien Bond Number B1225589 ("Lien Discharge Bond"). A true and accurate copy of the Lien Discharge Bond is attached hereto as **Exhibit "9"** and is incorporated herein by reference.

35. In a letter dated March 24, 2020, more than 60 days after CCS provided Selective with the filled in Proof of Claim Form and all of the backup documents, Selective denied the Payment Bond Claim. A true and accurate copy of the March 24, 2020 letter is attached hereto as **Exhibit "10"** and is incorporated herein by reference.

36. Selective denied the Payment Bond Claim and asserted that CCS did not comply with Section 4.2.1 of the Bond.

37. In a letter dated April 6, 2020 Selective denied CCS's claim on the Lien Discharge Bond. A true and accurate copy of the April 6, 2020 letter is attached hereto as **Exhibit "11"** and is incorporated herein by reference.

## COUNT ONE
## BREACH OF PAYMENT BOND

38. CCS incorporates the allegations set forth in paragraphs 1-37 of this Complaint as if each allegation was restated herein.

39. The Payment Bond states that "The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and

assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference."

40. The Payment Bond states that a claimant is "an individual or entity having a direct contact with the Contractor or a subcontractor of the Contractor to furnish labor, materials or equipment for the performance of the Contract."

41. The Payment Bond states that "The intent of this Bond shall be to include without limitation in the terms of "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for the performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished."

42. The Contractor identified in the Payment Bond is Sharpe.

43. The Surety identified in the Payment Bond is Selective.

44. The Project identified in the Payment Bond is the Holiday Inn Express & Suites located at 236 Gateway Center Blvd., Brunswick, Georgia 31525.

45. CCS is a Claimant as defined in the Payment Bond.

46. CCS did not have a direct contract with Sharpe.

47. Paragraph 4.2 of the Payment Bond states that "Claimants that do not have a direct contract with the Contractor .1 Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim, stating with substantial accuracy the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed"

48. Paragraph 4.2 of the Bond does not specify the form of the notice other than it shall be written.

49. The word "Notice" means "notification of warning" or the "fact of observing or paying attention to something.

50. The Claim of Lien states in writing that CCS claims the sum of $161,732.86 for labor provided to Hale relating to the Project.

51. The Claim of Lien notified Sharpe and Dixon that CCS was claiming it was owed $161,732.86 for labor provided to Hale for property located at 236 Gateway Center Blvd., Brunswick, Georgia 31525.

52. The Claim of Lien was sent to Dixon and Sharpe within 90 days after CCS last provided labor to Hale for use at the Project.

53. Other than substantially identifying the amount of the claim and the name of the party to whom the labor was done or provided, section 4.2.1 of the Bond does not require a Claimant to provide any further information.

54. The Claim of Lien contains all of the information required under Section 4.2.1 of the Bond.

55. When Selective denied the Payment Bond Claim in its March 24, 2020 letter it stated that CCS failed to comply with Section 4.2.1 of the Bond.

56. Selective did not state what other information CCS failed to provide to Sharpe or Dixon beyond the information provided in the Lien.

57. When Selective denied the Payment Bond Claim again in its April 6, 2020 letter it simply claimed that CCS failed to comply with Section 4.2.1 of the Bond. Selective stated "The notice must state with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or for whom the labor was done or performed. None of this has occurred".

58. Selective further attempted to re-write the bond by stating that the "lien cannot be used to provide notice of the claim under the terms of section 4.2.1 of the Payment Bond. The "written notice" required under Section 4.2.1 of the Payment Bond is akin to a demand".

59. Nowhere in Section 4.2.1 of the Bond does it state that a demand has to be made.

60. The failure and refusal of Selective and Sharpe to pay CCS pursuant to the terms of the Payment Bond is a breach of the Bond.

61. Section 6.2 of the Bond states that "in the event the Surety shall not act within the 45 day period, then the Claimant shall be entitled to legal interest beginning on the 45th day on any amount the Claimant establishes as properly owed to it by the Surety for labor or materials supplied to the Project and such entitlement to interest shall be the sole remedy available to the Claimant for the Surety's failure to act within the 45 day period.

62. CCS is entitled to interest on the amount of its Bond Claim starting on the 45th day after it submitted its claim to the Surety on January 16, 2020.

## COUNT TWO
## BREACH OF LIEN DISCHARGE BOND

63. CCS incorporates the allegations stated in paragraphs 1-62 of this Complaint as if each allegation was restated fully herein.

64. Within 30 days after first providing labor to the Project, CCS mailed a Notice to Contractor to Sharpe, Dixon and others. See Exhibit "2".

65. The Notice to Contractor provides the name and address and telephone number for CCS.

66. The Notice to Contractor provides the name and address of each person at whose instance the labor, services or materials are being furnished.

67. The Notice to Contractor states that CCS is providing "Services And/or labor Furnished".

68. The Notice to Contractor states that the lienable labor is being provided to Henry County Electric.

69. The address for Henry County Electric is provided in the Notice to Contractor.

70. The name and location of the Project is identified in the Notice to Contractor.

71. The Notice to Contractor contends that the amount claimed to be due at the time that the Notice to Contractor was provided was zero.

72. CCS filed its Claim of Lien on September 5, 2019 in the Superior Court of Glynn County.

73. CCS filed suit against Hale on October 10, 2019 in the Superior Court of Gwinnett County.

74. On October 14, 2019 CCS filed a Notice of Commencement of Lien Action in the Superior Court of Glynn County. A true and accurate copy of the Notice of Commencement of Lien Action is attached hereto as **Exhibit "12"** and is incorporated herein by reference.

75. The Notice of Commencement filed by Dixon (Exhibit "1" herein) does not provide a legal description of the Property.

76. In refusing to pay CCS under the Lien Discharge Bond, Selective acknowledged that it did in fact have, and did in fact review, CCS' Notice to Contractor but "Carolinas Construction has not provided sufficient documentation and/or information to show that it's alleged Notice met the 30 day requirement of O.C.G.A. 44-14-365.5 (a) (*sic*).

77. Selective does not state what information is missing or how the Notice to Contractor fails to comply with O.C.G.A. 44-14-365.1 (c).

78. When CCS submitted the Payment Bond Claim to Selective, it provided Selective with all notices that were provided by CCS, various e mails showing the manpower hours for which payment was being sought and a sworn Proof of Claim Form.

79. Selective and Sharpe are obligated to CCS pursuant to the terms of the Lien Discharge Bond and their failure to pay constitutes a breach of contract.

### COUNT THREE
### BAD FAITH AGAINST SELECTIVE

80. CCS incorporates the allegations set forth in paragraphs 1-79 of this Complaint as if each allegation was restated fully herein.

81. Selective has failed to pay CCS pursuant to the terms of the Payment Bond within 60 days after CCS made a demand for payment under the Payment Bond.

82. Selective's refusal to pay is in bad faith.

83. Selective is liable to CCS for an additional amount of not more than 25% of its liability to CCS as well as all reasonable attorney's fees.

## COUNT FOUR
## ATTORNEY FEES AGAINST SHARPE

84. CCS incorporates the allegations set forth in paragraphs 1-83 of this Complaint as if each allegation was restated fully herein.

85. Sharpe has acted in bad faith, has caused CCS unnecessary trouble and expense and has been stubbornly litigious for which CCS is entitled to recovery its' attorney's fees and costs and expenses of litigation.

Wherefore, CCS demands a judgment as follows:

The principal sum of $161,732.86; and
Legal interest on the principal sum from March 1, 2020; and
Bad faith payment of 25% of the liability of Selective under the Payment Bond; and
Attorney fee's from Selective pursuant to O.C.G.A. §10-7-30; and
Court costs and attorney fees' from Sharpe; and
Any and all other relief the Court deems just and proper.

Respectfully submitted,

David Merbaum
Georgia bar number 006700

Merbaum & Becker, P.C.
5755 North Point Parkway
Suite 284
Alpharetta, Georgia 30022
dmerbaum@mbpclaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of January 2021, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, and served by the Court's CM/ECF System to counsel of record. Others listed below who do not receive notice of filing by operation of the Court's electronic filing system, were served a copy of the foregoing via first class U.S. Mail, with adequate postage prepaid.

| American Express<br>P.O. Box 981532<br>El Paso, TX 79998 | American Funding Services<br>80 Broad Street, Suite 3303<br>New York, NY 10004 | Cumberland Services,<br>LLC<br>100 Racetrack Road<br>Dothan, AL 36301 | Georgia Department of<br>Revenue<br>ARCS - Bankruptcy<br>1800 Century Blvd NE,<br>Atlanta, GA 30345 |
|---|---|---|---|
| Internal Revenue Service<br>CIO<br>P.O. Box 7346<br>Philadelphia, PA 19101 | Kabbage<br>730 Peachtree St NE #1100<br>Atlanta, GA 30308 | Ridge Petroleum, Inc.<br>100 Peachtree St<br># 1950<br>Atlanta, GA 30303 | American Funding Services<br>80 Broad Street, Suite 3303<br>New York, NY 10004 |

    /s/  *Zack D. Anderson*

-16-